UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Deborah Faye Fugate,

                           Plaintiff,

       v.

Commissioner of Social Security,

                           Defendant.

**Decision and Order**

18-CV-1211 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 5, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 12.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Disability Insurance Benefits under Title II of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

3

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Of the various issues that plaintiff has raised, her stroke and its potential aftermath draw the Court's immediate attention. On November 25, 2016, plaintiff's husband rushed her to the emergency room with symptoms of dizziness, double vision, and difficulty walking. [808.] Doctors diagnosed plaintiff with an acute brain stem stroke; an MRI and a CT together showed a focal stenosis in her left vertebral artery and tiny infarctions in her left cerebellar hemisphere and in her left temporal lobe cortex. [811.] Over a year later, on December 7, 2017, plaintiff no longer had headaches, frequent falls, numbness, or tremor, but she continued to have memory loss and dizziness. [430.] This finding was a continuation of a different examination on October 4, 2017, in which one of plaintiff's physicians found that plaintiff still had "slow speech and thought." [667.] The timing of plaintiff's stroke and the neurological deficits that appeared to persist over a year later are significant for two reasons. Plaintiff's stroke and its aftermath postdated a consultative examination from November 2015 to which the ALJ assigned significant weight. [28.] The consultative examiner found no neurologic deficits related to memory, thought, or speech—and nothing in the record suggests that he would have had reason to find any deficits a year before plaintiff's stroke. [359–60.] *Cf. Campbell v. Berryhill*, No. CV 17-4851, 2019 WL 2166852, at *10 (E.D. Pa. Mar. 11, 2019) ("The level of impairment or deficit is not clear. As previously mentioned, the only medical RFC assessments in the record were completed by the state agency reviewing physicians and predate Plaintiff's second stroke."), *report and recommendation adopted*, No. CV 17-4851, 2019 WL 2162141 (E.D. Pa. May 17, 2019). In contrast, the other consultative evaluation to which the ALJ assigned great weight occurred on September 14, 2017—nearly a year after plaintiff's

4

stroke—yet the stroke and any lasting deficits received no mention at all. [393–402.]  In fact, the medical consultant in September 2017 made a note of "normal neurological exam" [393] even though two different physicians found memory loss, dizziness, slow speech, and slow thought just one and three months later.  *Cf. Fleming v. Colvin*, No. CIV.A. 2:14-2144-TMC, 2015 WL 4773239, at *6 (D.S.C. Aug. 12, 2015) ("What cannot be ignored in the case *sub judice* is the fact that the ALJ discounted Plaintiff's allegation of stroke because she had no diagnostic test results to support her allegation.").  The ALJ briefly acknowledged the October 4, 2017 examination without acknowledging the notation of slow speech and thought.  [26.]  The ALJ cited the exhibit—Exhibit 15F—that contained the December 7, 2017 assessment of memory loss and dizziness.  The ALJ, however, did not specifically acknowledge the December 7, 2017 visit at all and somehow cited Exhibit 15F for the point that plaintiff "has had no falls, numbness, weakness *or memory loss*."  [25 (emphasis added).]

Under these circumstances, any reasonable factfinder would have to conclude that the ALJ either overlooked what appear to be persistent neurological deficits or discounted them with no explanation.  Consequently, the ALJ failed to give good reasons for the significant weight accorded to the consultative examiner and the medical consultant.  This was error that requires remand.  *Cf. Burgin v. Astrue*, 348 F. App'x 646, 649 (2d Cir. 2009) (summary order) ("The ALJ's consideration must be explicit in the record.  Thus, we do not hesitate to conclude that the ALJ erred in failing to explain and 'give good reasons' for the weight accorded [a physician's] opinion.").  In ordering remand, the Court is concerned primarily with ensuring that the Commissioner develops a record that adequately addresses any persistent neurological deficits that plaintiff had for the relevant period, following her stroke.  Another consultative examination might be helpful but will be left to the Commissioner's discretion.  *See generally* 20 C.F.R. § 404.1517.  The Court takes no position at

this time as to what conclusions should be drawn about any neurological deficits that plaintiff has or what impact any deficits might have on her RFC.  The Court also declines at this time to address any other issues that the parties have raised, though the Commissioner upon remand is free to revisit those issues as might be appropriate.

## III. CONCLUSION

For the above reasons, the Court denies the Commissioner's motion (Dkt. No. 12).  The Court grants plaintiff's cross-motion (Dkt. No. 7) in part to vacate the Commissioner's final decision and to remand the matter for further proceedings consistent with this Decision and Order.  The Court denies plaintiff's cross-motion to the extent that it seeks any other relief.

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                  __/s Hugh B. Scott_____
                                                  Hon. Hugh B. Scott
                                                  United States Magistrate Judge

DATED: March 13, 2020